Marian Bell, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and City of Philadelphia, Respondents.

Argued June 5, 1980, before Judges MENCER, CRAIG and MACPHAIL, sitting as a panel of three.

*Van P. Braswell,* for petitioner.

*Barry J. Grossman,* Assistant City Solicitor, with him *Sheldon L. Albert,* City Solicitor and *Tyler E. Wren,* Deputy City Solicitor, for respondents.

OPINION BY JUDGE CRAIG, July 22, 1980:

Marian Bell, claimant, petitions for review of the March 22, 1979 order of the Workmen's Compensation

Appeal Board (board), which affirmed the referee's decision in favor of employer City of Philadelphia (city), terminating compensation then being paid to claimant for total disability.

This case has followed a tortuous path. Claimant tripped and fell while at work, once in January, 1974 and again in February, 1974; traumatic thrombophlebitis and consequent pulmonary emboli, resulting from the injuries sustained in those falls, required her to be hospitalized three times in 1974. Also as a result of the falls, claimant suffered from a fibrous myositus in the chest area, caused by aggravation of degenerative arthritis by the injuries and limited activity due to the phlebitic condition.

Claimant filed her petition for compensation on account of total disability, under The Pennsylvania Workmen's Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1 et seq., on June 19, 1974, after the second hospitalization; the third instance occurred in September of that year. The city did not answer the petition, nor did it file any denial or notice of compensation payable.

However, the city did pay claimant injured-on-duty (I.O.D.) wages through December 2, 1974.

On December 9, 1975, after several hearings, the referee awarded claimant benefits for total disability resulting from injuries sustained in the two work-related accidents. The referee based his decision on the city's omissions, noted above, and the city's admission of claimant's total disability from the compensable injuries, by the city's counsel on the record and by virtue of having paid wages in lieu of compensation up to December 2, 1974.

On the city's appeal, the board remanded the case to the referee for formulation of sufficient factual findings on the merits, citing *Sherred v. Pittsburgh,* 7 Pa. Commonwealth Ct. 401, 299 A.2d 381 (1973).

On November 24, 1975, after the final hearing on the claim petition, but before the referee issued his initial decision, the city filed a petition to terminate compensation. That petition was consolidated with the remanded claim petition, and additional hearings were held.

In a January 25, 1977 decision, the referee, with specific findings, again concluded that claimant had been totally disabled as a result of the injuries sustained; however, the referee found that claimant's disability, due to the thrombophlebitic and pulmonary complications, had ceased by December of 1974. He found further that claimant remained totally disabled due to the orthopedic chest problem, likewise related to the original injuries, until this latter disability ceased as of October 12, 1976.

Accordingly, the referee awarded claimant benefits for the period from December 5, 1974 (the time at which I.O.D. wages were unilaterally discontinued) through October 11, 1976, and he also directed the city to pay certain costs and medical expenses. Additionally, on a finding that the city had demonstrated no reasonable basis for the contest, he ordered the city to pay claimant's counsel fees.

Both claimant and the city appealed to the board. Claimant challenged the termination as of October, 1976, arguing that her disability continued beyond that date; the city appealed the award of counsel fees, arguing that it had set forth a reasonable basis.

On July 7, 1977, the board affirmed the referee in both regards, except that the amount of the counsel fee award was reduced.

After initiating an appeal to this court, claimant filed, on May 11, 1978, a petition for rehearing before the board. The board initially granted "rehearing" to the extent of argument upon that petition, and this

court, by the late President Judge BOWMAN, remanded the case to the board for further proceedings.

After argument on the rehearing petition, the board on March 22, 1979, issued its opinion and order denying the rehearing petition and reinstating its opinion and order of July 7, 1977.

This appeal by claimant followed.

Claimant presses two points: (1) the determination, that claimant's disability due to the compensable injuries ceased on October 12, 1976, was not supported by substantial evidence; and (2) the board abused its discretion in denying a rehearing.

As to the first point, the medical testimony in the record is plainly conflicting with respect to physiological disability. Such conflicts in testimony and questions of credibility are the referee's province, and "the referee may, in lawful exercise of his broad discretion, accept or reject the testimony of any witness *in whole or in part.*" *American Refrigerator Equipment Corporation v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 595, 377 A.2d 1007, 1010 (1977) (emphasis in original).

Claimant's argument focuses on the testimony of Dr. Stein, the city's physician, particularly his testimony that claimant exhibits a functional (psychological) overlay.[1] We note that Dr. Qualls,

---

[1] Dr. Stein testified as follows:

Q. As a result of your examination of Mrs. Bell, what objective findings were there to support her complaints?

A. None really. There were no objective findings that were long existing. Most of the findings at the time of my examination were subjective complaints on her part. Over and above the things that I have told you about as far as the physical condition is concerned, there is no question about the fact that she was a very tense, hyperactive individual and that there is a tremendous functional overlay here. It could be conscious. It possibly could be

claimant's orthopedist, also indicated that claimant had a "functional overlay in her pain complex."[2]

subconscious. As far as my own personal opinion is concerned, I feel that possibly both elements are present. I think there is a conscious and an unconscious functional overlay here.

Q.  Doctor, what type of physical activity can Mrs. Bell engage in from an orthopedic standpoint?

A.  From an orthopedic standpoint, there should be no restriction. From a total overall point of view, with the functional overlay that exists here and with the sense of ill-being that pervades, that becomes a subjective type of thing. Frankly, I think that as far as she is concerned, it would probably be a lot better for her if she would forget about this and resume her normal activities, irrespective of any medical, legal or other aspects or any question of compensation or anything of that sort, just as an individual. The worst thing that can happen to her is to have pending litigation in this type of personality. If she could just relax and go on back to what she was doing before, I am sure she would live a much more satisfactory life.

Q.  What is your prognosis of Mrs. Bell's condition?

A.  I think the prognosis has to be more in the emotional area rather than the organic. As far as the organic area is concerned, she is basically pretty well recovered at the present time. As far as the other phase is concerned, that is really not an orthopedic evaluation.

[2] Dr. Qualls testified:

Q.  Doctor, I know that you are not certified in anything other than orthopedics. However, as a doctor with a lot of history dealing with patients and many years in the medical field, do you have an opinion as to Mrs. Bell's reaction to her pain or her overreaction to her pain?

A.  I feel this patient does overreact. There is no question about it. Again, if she were working and functioning at the time of the original accident, then, the pain came along—I can't say how much she hurts or how much pain is what. We often have situations like this. I think she is far above the average reactor, so to speak. There is a functional overlay in her pain complex. As an orthopedist, I do feel capable of making that statement.

Claimant argues that this evidence establishes that her disability continued beyond the date the referee found it to have ceased.

However, neither physician's testimony stated that the "overlay" is disabling. Also, neither physician's testimony justifies any inference that he believed the overlay to be disabling: Dr. Qualls did not suggest any disability from it, and Dr. Stein recommended that it would be better for claimant to resume her normal activities. Moreover, not even such an inference would suffice to establish unequivocally a causal relationship between the work-related injuries and the overlay, which is essential to a conclusion of legally compensable disability.

Claimant's petition for rehearing before the board, to which we now turn, recognized that absence of an established causal sequence, in that it requested that the board "return the cases to the referee for the purpose of taking testimony as to the cause of the functional overlay" noted by Dr. Stein.

As to the rehearing request, under Section 426 of the Act, *as amended,* 77 P.S. §871, the grant or denial of a rehearing is within the board's discretion, and this court's review is limited to correcting abuses of that discretion. *Douglas v. Workmen's Compensation Appeal Board,* 32 Pa. Commonwealth Ct. 156, 377 A.2d 1300 (1977).

We can find no abuse here, because, as the board noted in its March 22, 1979 opinion, the petition for rehearing "does not identify what new evidence would be produced concerning any overlay in claimant, nor does it state that said [unidentified] evidence was not available at the time of the prior hearings, even though due diligence to gain such evidence had been exerted." Plainly, we cannot command a rehearing simply to afford opportunity to obtain new evidence

which remained unidentified at the time of the petition for rehearing.

Accordingly, we must affirm the decision appealed from.

ORDER

AND Now, this 22nd day of July, 1980, the March 22, 1979 order of the Workmen's Compensation Appeal Board at No. A-72799 is affirmed; accordingly, judgment is to be entered in favor of claimant Marian Bell and against the City of Philadelphia as follows:

(1) The city shall pay to claimant the amount of $106.00 per week for the period commencing December 5, 1974 and continuing through October 11, 1976.

(2) Interest is to be assessed on all deferred payments of compensation at the rate of 10% per annum.

(3) The city shall pay to claimant, in addition to the above, the sum of $400.00 as reimbursement for costs incurred in presenting the testimony of Leonard E. Lecks, M.D.

(4) In addition, the city shall pay to claimant the sum of $500.00 as reasonable fees for her initial counsel, Dennis Talty, Esq.

(5) In addition, the city shall pay directly to William T. Adis, Esq., the sum of $1514.00 as reasonable fees for his services as claimant's subsequent counsel.

(6) In addition, the city shall pay to claimant the sum of $12,895.55 as reimbursement for medical, hospital, and prescription expenses incurred because of the injuries sustained; this sum shall be subject to adjustment for any portion of that amount which shall have been paid by the city directly or through its insurance coverage.