William F. George, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Portage Borough Council, Respondents.

Argued September 18, 1981, before Judges BLATT, CRAIG and MACPHAIL, sitting as a panel of three.

24

*Nicholas J. Mikesic,* for petitioner.

*Robert G. Rose, Spence, Custer, Saylor, Wolfe & Rose,* for respondent, Portage Borough Council.

OPINION BY JUDGE MACPHAIL, December 1, 1981:

William F. George (Claimant) appeals from a decision of the Workmen's Compensation Appeal Board (Board) upholding a referee's grant of Portage Borough Council's (Employer) Termination Petition. In view of the fact that several errors of law were made by the referee, and were affirmed by the Board, we will reverse and remand.

Claimant worked as a police officer for the Employer. On September 5, 1976, while in the course of his employment, Claimant was injured when struck by a series of blows from an assailant's fist to the nose and left side of the Claimant's face and left eye. On September 30, 1976, a Notice of Compensation Payable was executed, describing Claimant's injuries as "comminuted fracture of the nose, abrasions of face and left eye." Employer filed a Petition for Termination on September 8, 1977, alleging that the Claimant's injuries had healed within one month. Claimant denied this allegation, claiming that his eye injury was now permanent in nature.

Claimant has been a diabetic for roughly 25 years and at the time of his injury suffered from diabetic retinopathy, a serious deteriorative condition of the eyes and a manifestation of a diabetic condition. According to the findings of the referee, Claimant's left eye was in an advanced proliferative stage of this condition, which would eventually result in tractional de-

tachment of the retina. On August 12, 1976, Claimant had only eccentric vision in his left eye, which was described by Employer's medical witness[1] as a loss of central vision, requiring Claimant to look to the side of an object in order to perceive it. The referee also found Claimant's visual acuity on August 12 to be 20/400 in his left eye. Claimant was also seen by his ophthalmologist, Dr. Everett, on September 1, four days prior to the injurious event, and no retinal detachment was found at that time. On September 22, 1976, tractional retinal detachment was found to have occurred in the left eye.[2]

The referee gave two separate reasons for granting the Termination Petition. The first of these reasons has its source in referee's Finding of Fact No. 21: "The cause of the loss of vision of the left eye is tractional retinal detachment and not the result of trauma to the eye of September 5th, 1976." Of course, there must be a causal relationship between the present disability and the September 5 injury, but an examination of the record discloses this determination of who had the burden of proof by the referee:

Alright, now, procedurally, this is how I view the matter, if . . . there is evidence, competent evidence, to establish that the fracture of the

[1] Dr. Ashman, an ophthalmologist, who was testifying concerning evidence presented at the hearing and who did not personally examine Claimant at any time.

[2] Tractional detachment is the type of detachment related to diabetic retinopathy, and is a different type of detachment from traumatic retinopathy, which may be surgically repaired. Both Doctors Everett and Ashman indicated that a trauma can hasten the occurrence of tractional detachment; furthermore Dr. Everett was of the opinion, with a reasonable degree of medical certainty, that the trauma accelerated the tractional detachment. Drawing upon his long experience in treating diabetic retinopathy, the doctor stated that, in his view the detachment should not have normally occurred within such a short time after the September 1 checkup.

nose, abrasions of the face and of the left eye have healed then [you, the Employer] . . . have met your present burden for termination. Now if the Claimant's theory is that . . . there are additional injuries not properly described as the result of that injury, then you [the claimant] have to show this by competent evidence that these injuries resulted from the blow of 9-5-76.

It appears that the referee considered Claimant's loss of vision in the left eye to be a different injury from that set forth in the compensation payable agreement. In *Workmen's Compensation Appeal Board v. Precisionware, Inc.*, 21 Pa. Commonwealth Ct. 573, 347 A.2d 322 (1975), the Employer also argued that the referee should not have considered evidence of back injuries on a modification petition when the compensation agreement described the injury as "nerve injury to left arm." This Court therein stated: "We do not view the meager description in the compensation agreement as strictly controlling the course of future litigation." In the instant case, Claimant testified that he was struck in the left eye and, as we have noted, the agreement describes the nature of the injury as "comminuted fracture of the nose, abrasions of face *and left eye.*" (Emphasis added). We believe the decision in *Precisionware* is controlling authority in determining that the injury described in the compensation payable agreement is adequate to cover Claimant's present disability.

Accordingly, the placing of the burden of proving that Claimant's present disability resulted from the injury he sustained on September 5, 1976, is quite clearly erroneous. "[I]f a claimant is currently disabled, the [Employer] must show a lack of causal connection between the disability and the compensable injury. We have never held that in termination proceedings the burden shifts at anytime to the claimant to

prove the existence of a causal connection between his disability and his injury." *Unity Builders, Inc. v. Workmen's Compensation Appeal Board,* 50 Pa. Commonwealth Ct. 527, 532, 413 A.2d 40, 43 (1980) (citation omitted). See *Children's Aid & Family Services v. Workmen's Compensation Appeal Board,* 53 Pa. Commonwealth Ct. 379, 417 A.2d 1297 (1980); *Workmen's Compensation Appeal Board v. F. W. Woolworth Co.,* 19 Pa. Commonwealth Ct. 413, 338 A.2d 784 (1975). Interestingly, the Board correctly places the burden of proof upon the Employer but concludes that the testimony of Doctors Ashman and Everett satisfies that burden. That conclusion is for the fact finder, not the Board.

In view of this error, the finding of non-causation is suspect and should be redetermined.

The second reason asserted for granting termination can be found in referee's Finding of Fact No. 23 and referee's Conclusion of Law No. 4. Finding No. 23 states: "On September 1st, 1976, the claimant's vision in his left eye was lost to him for all practical intents and purposes."[3] Conclusion of Law No. 4 held: "Where an employee suffers from a disease unrelated to his employment and where the natural progression of said disease will result in the loss of vision for all intents and purposes and where there exists no reasonable expectation that treatment will arrest said progression and said condition exists prior to the occurrence of any work related injury the claimant has already lost for all practical intents and purposes his eye and, therefore, cannot have lost it within the meaning of the Workmen's Compensation Act."

We are not totally certain whether the referee meant by these two statements that the vision was lost

---

[3] As will be explained, this statement may be better viewed as a mixed question of law and fact.

prior to September 5, or that the vision was certain to be lost in the near future from a detachment and that therefore vision was in effect lost prior to the September 5 incident. The latter reasoning is quite clearly contrary to law, for Section 7 of The Pennsylvania Workmen's Compensation Act, Act of March 29, 1972, P.L. 159, *as amended,* 77 P.S. §411 states that "injury . . . shall be construed to mean an injury to an employee, *regardless of his previous physical condition,* . . . and such disease or infection as . . . is aggravated, reactivated or *accelerated* by the injury." (Emphasis added).

As for the interpretation that the referee intended by his Finding No. 23 to say that the vision was actually lost prior to the September 5 injury, we note initially that the question of whether vision was lost for all practical intents and purposes prior to the compensable work related incident is a mixed question of law and fact. *Diaz v. Jones & Laughlin Steel Corp.,* 155 Pa. Superior Ct. 177, 38 A.2d 387 (1944) held that a claimant may recover for the loss of an eye which was in previously poor condition so long as the claimant had not previously permanently lost the use of that eye for all practical intents and purposes. The standard, said the Court, was "whether *using both eyes* he had better general vision than he would have with only the [previously unimpaired] eye." *Id.* at 184, 38 A.2d at 390. *See Shannon v. Twissini,* 190 Pa. Superior Ct. 522, 154 A.2d 310 (1959).

As we have noted, the referee found that Claimant's vision in his left eye was 20/400 on August 12 and that on that date Claimant had eccentric vision. We believe these two findings are in direct conflict with his finding of prior loss of sight. Claimant's medical expert, Doctor Everett, testified that on August 12, the left eye provided support for the right eye. The Employer's own medical expert, Doctor Ash-

man, indicated that vision of the nature described in the referee's findings would benefit the fellow eye by increasing the visual field and allowing depth perception. As such, Claimant clearly had better vision *"using both eyes"* than with only the unimpaired right eye.

The Board here cites *Neshaminy Construction Co. v. Workmen's Compensation Appeal Board,* 43 Pa. Commonwealth Ct. 357, 402 A.2d 1111 (1979) as a case in which a claimant after a work related injury was left with vision similar to that previously recorded in the present Claimant's left eye and in which this Court approved a finding that there was a loss for all practical intents and purposes. The error of the Board is in comparing a case involving loss due to a work related injury (*Neshaminy*) with a case involving a question of degree of loss *prior* to injury. The case of *Shannon v. Twissini,* 190 Pa. Superior Ct. 522, 154 A.2d 310 (1959) is instructive here. In *Shannon,* the claimant had previously lost left eye vision due to a cataract removal. The left eye had to be enucleated due to an on job injury. The Court noted than a cataract removal, where the cataract was incurred at work, would be grounds for a loss of use recovery, which means it was lost for all intents and purposes. Yet the Court allowed compensation for loss of that eye.

It is important for us to emphasize that this is not a case of conflicting medical testimony, where the conflict is to be resolved by the referee-fact-finder. The only medical testimony referenced in the referee's findings is that of Claimant's witness, Dr. Everett. Indeed, there is no substantial difference in the testimony of Doctors Everett and Ashman, Employer's expert. Doctor Everett testified that in his medical opinion with a reasonable degree of certainty, the blow to Claimant's eye on September 5 caused an accelerated retinal detachment or aggravated the previously

existing diabetic retinopathy. Doctor Ashman opined that Claimant's visual problem was the result of diabetic retinopathy alone or a detached retina caused by diabetic retinopathy *"and/or by the blow to the eye"*.

Thus, the importance of a reconsideration of the evidence following a correct determination of who has the burden of proof in this case is readily apparent, as is the necessity of the fact finder to resolve the inconsistency between the facts found and the conclusions of law flowing therefrom. We therefore remand this case for a determination of these issues.

### ORDER

AND Now, this 1st day of December, 1981, the order of the Workmen's Compensation Appeal Board is reversed and remanded for proceedings in accordance with this opinion.