308

Roeberg Enterprise, Inc., d/b/a National Cleaner & Shirt Launderers, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Louise Giddens, Respondents.

Argued March 5, 1979, before Judges CRUMLISH, JR., ROGERS and MACPHAIL, sitting as a panel of three.

*Richard A. Bausher,* with him *Stevens & Lee,* for petitioner.

*Patricia H. Frankel,* for respondents.

OPINION BY JUDGE ROGERS, April 27, 1979:

Roeberg Enterprise, Inc. appeals from a decision of the Workmen's Compensation Appeal Board which reversed a referee's denial of compensation and remanded the case to the referee to make a finding as to the duration of total disability and to make an award of compensation accordingly.

Louise Giddens was employed by Roeberg Enterprise, Inc., a dry cleaning establishment. In the early afternoon of March 20, 1974, while retrieving clothing which had fallen into an automated machine known as the "tunnel," Mrs. Giddens was burned or shocked, causing her to fall, strike her head, and suffer unconsciousness and a generalized seizure. She was taken to the hospital and on April 3, 1974 underwent surgery to correct a subarachnoid hemorrhage secondary to a ruptured intracranial aneurysm.

The referee concluded that the claimant had failed to prove that either the aneurysm or its rupture arose in the course of her employment or was related thereto, and she was not therefore entitled to compensation for disability or for payment of medical expense.[1] The Board decided that the referee had capriciously disregarded sufficient medical testimony relating the rupture of the aneurysm to Mrs. Giddens' work, reversed the order of referee and remanded the case for an award of compensation.

---

[1] We agree with the Board that the pre-existing condition of claimant's aneurysm is immaterial under Section 301(c) of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §411.

Our scope of review in a case such as this where the referee's decision was against the party with the burden of proof is limited to determining whether his findings of fact were reached without capriciously disregarding competent evidence. *American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board,* 31 Pa. Commonwealth Ct. 590, 377 A.2d 1007 (1977).

Where no obvious causal connection exists between an injury and the claimant's work, unequivocal medical testimony, not based on mere possibilities, must be produced to establish the relationship. *Westmoreland Casualty Co. v. Workmen's Compensation Appeal Board,* 36 Pa. Commonwealth Ct. 307, 387 A.2d 683 (1978). Whether medical testimony is equivocal and uncertain on the one hand or unequivocal and positive on the other goes to competency, not credibility; that is, equivocal testimony is incompetent. *American Refrigerator Equipment Co., supra.* We must, therefore, review the record to determine whether the medical testimony was unequivocal and the referee's disregard of it consequently improper.

Dr. Gregory J. Lignelli was the only medical expert who testified. In addition to being Mrs. Giddens' treating physician, he was board certified in neurosurgery and had taught classes in subarachnoid hemorrhage and aneurysm. Dr. Lignelli was asked a proper hypothetical question which concluded as follows:

Do you have an opinion given these circumstances based on a reasonable degree of medical certainty considering those facts as well as the medical facts which you are personally aware of in regard to Mrs. Giddens, whether there was a causal relationship between the work that Mrs. Giddens did and the event that happened on March 20, 1974?

Dr. Lignelli answered:

A. I believe it is reasonable to say that the stresses of the environment you described contributed to Mrs. Giddens' illness or her aneurysm rupture.

His testimony continued:

Q. Can you say physiologically what happened that would contribute, in what way did the strain contribute to it?

A. I believe that the strain Mrs. Giddens was under at the time of the work was sufficient ' · to elevate her blood pressure which in turn would increase the pressure inside the pre-existing aneurysm and allow disruption of the wall and subsequent subarachnoid hemorrhage.

This was unequivocal testimony establishing the relationship between the ruptured aneurysm and Mrs. Giddens' employment. *Ricciardi v. Workmen's Compensation Appeal Board,* 34 Pa. Commonwealth Ct. 316, 383 A.2d 571 (1978).

It is true that on cross-examination Dr. Lignelli when asked whether particular conditions mentioned in the hypothetical question, such as the temperature, Mrs. Giddens' bending, lifting and stretching while performing her job and the presence of acids and fluids, were significant, responded that some of these factors had no significance and others were only possibly significant. On redirect examination, however, Dr. Lignelli testified that the combination of circumstances in his opinion were stressful and that they caused Mrs. Giddens' blood pressure to elevate causing the aneurysm to rupture.

The Board is empowered to remand a case to a referee only when the referee's findings are not supported by competent evidence or when the referee has failed to make a finding on a crucial issue neces-

sary for the proper application of the law. *Forbes Pavilion Nursing Home, Inc. v. Workmen's Compensation Appeal Board,* 18 Pa. Commonwealth Ct. 352, 336 A.2d 440 (1975). The referee, of course, failed to make a finding concerning the period of total disability and therefore the Board's order of remand was proper.

Order affirmed.

ORDER

AND Now, this 27th day of April, 1979, the decision of the Workmen's Compensation Appeal Board is hereby affirmed.