Unity Builders, Inc. and Fireman's Insurance Company, Petitioners *v.* Commowealth of Pennsylvania, Workmen's Compensation Appeal Board and Thomas Ellisor, Respondents.

Argued March 13, 1980, before President Judge CRUMLISH and Judges ROGERS and CRAIG, sitting as a panel of three.

*Edward A. McFarland, Thomson, Rhodes & Grigsby,* for petitioners.

*Clifford A. Johns, Jr.,* for respondent, Thomas Ellisor.

OPINION BY JUDGE ROGERS, April 15, 1980:

Unity Builders, Inc. and its insurer, Fireman's Insurance Company (Petitioners) have appealed from an order of the Workmen's Compensation Appeal Board (Board) affirming a referee's dismissal of the petitioners' petition for termination of workmen's compensation benefits being paid by petitioners to Thomas Ellisor.

On September 12, 1977, Ellisor sustained an injury to his neck in the course of his employment with Unity Builders, Inc. Compensation benefits were paid to Ellisor for total disability pursuant to a compensation agreement between Ellisor and petitioners. On April 24, 1978, petitioners filed a termination petition with a request for a supersedeas to be effective as of that date. Petitioners subsequently amended their requests for supersedeas, to have it effective as of May 26, 1978, which the referee granted.

At the referee's hearings, petitioners produced two medical expert witnesses, one of whom testified unequivocally that Ellisor was no longer generally disabled as a result of his injury of September 12, 1977, and specifically that Ellisor did not suffer from spastic torticollis, a condition which renders neck movement painful. Ellisor adduced the testimony of one medical expert, Dr. Ravella, who testified unequivocally that Ellisor suffered from spastic torticollis. When testifying regarding the causal relationship between Ellisor's condition and his September 12, 1977 injury, however, Dr. Ravella answered in terms which the referee found to be equivocal. Ellisor testified that he had had no problems with his neck prior to his September 12, 1977 injury and that at the time of the hearing he was still suffering from neck pains which prevented him from seeking employment.

The referee found, and the Board affirmed, that Ellisor suffered from spastic torticollis which was caused by his September 12, 1977 injury and that petitioners had failed to prove that all disability resulting from the September 12, 1977 injury had ceased.

Petitioners contend that some of the referee's findings of fact cannot be sustained without a capricious disregard of competent evidence in the record and that, if these findings are sustainable, they are inconsistent with other of the referee's findings. The findings of the referee objected to are:

14. It was the doctor's [Dr. Ravella] opinion that spastic torticollis resulted from cervical trauma, psychological factors, a progressive curia condition of metabolic acidosis. The doctor ruled out the later three causes as factors in the claimant's case and was of the opinion that the most possible origin was the trauma sustained on September 12, 1977.

. . . .

18. Although the testimony of Dr. Ravella is equivocal as to the causation of the spastic torticollis, he ruled out all causative factors with the exception of trauma which he concluded was possibly the causative factor.

19. In evaluating the claimant's testimony and the medical testimony and reports, your Referee is convinced and, accordingly, finds that the claimant as a result of his injuries of September 12, 1977, continued to be totally disabled.

20. The defendant having failed to prove that all disability resulting from the September 12, 1977 injury has in fact terminated, must have their [sic] prayer for a termination of compensation denied.

A capricious disregard of evidence "occurs when there is a willful and deliberate disregard of competent testimony and relevant evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Ney v. Workmen's Compensation Appeal Board,* 15 Pa. Commonwealth Ct. 381, 384, 327 A.2d 402, 403 (1974). The petitioners contend that findings of fact 14 and 18 constitute a capricious disregard of Dr. Ravella's testimony, for at no time did Dr. Ravella specifically state that the September 12, 1977 injury was the "most possible origin" of Ellisor's spastic torticollis, nor did Dr. Ravella "rule out all causative factors with the exception of trauma." We disagree. Our reading of Dr. Ravella's testimony in its totality, as we must, *Owens v. Workmen's Compensation Appeal Board,* 39 Pa. Commonwealth Ct. 510, 514, 395 A.2d 1032, 1034 (1979), convinces us that the essence of Dr. Ravella's testimony was exactly what the referee found it to be. For example, Dr. Ravella in response to questioning concerning other possible origins of Ellisor's spastic torticollis eliminated every origin other than trauma.

The petitioners next contend that if findings of fact 14 and 18 are sustained, then these findings are inconsistent with findings of fact 19 and 20 because Dr. Ravella's testimony was equivocal and therefore incompetent and thus cannot form the basis for the referee's findings that Ellisor remains totally disabled as a result of his original compensable injury. We agree that equivocal medical testimony is incompetent testimony, *Roeberg Enterprise, Inc. v. Workmen's Compensation Appeal Board,* 42 Pa. Commonwealth Ct. 308, 400 A.2d 911 (1979). Here, however, Dr. Ravella testified unequivocally that Ellisor suffered from spastic torticollis. Although petitioners' medical expert testified that Ellisor did not suffer from spastic torticollis, it was the prerogative of the referee to accept Dr. Ravella's testimony over that of petitioners' medical expert. *Mountz v. Workmen's Compensation Appeal Board,* 33 Pa. Commonwealth Ct. 583, 382 A.2d 507 (1978).

The question of whether or not Dr. Ravella's testimony concerning the causal relationship between Ellisor's spastic torticollis and his injury of September 12, 1977 was equivocal is at best academic. Ellisor had no burden of proving a causal connection between his compensable injury and his disability; rather, petitioners here had the burden of proving the lack of a causal connection. *See, e.g., Motor Truck Owners Conference, Inc. v. Workmen's Compensation Appeal Board,* 38 Pa. Commonwealth Ct. 406, 395 A.2d 588 (1978). The petitioners produced no evidence whatsoever to carry this burden, their case being that he did not have spastic torticollis and was not disabled. Thus, even if Dr. Ravella's testimony was not competent evidence supporting the referee's finding of causal connection, the finding of the existence of a causal connection is not in capricious disregard of competent evidence where, as here, there is no com-

petent evidence to support a contrary finding. *Workmen's Compensation Appeal Board v. F. W. Woolworth Company,* 19 Pa. Commonwealth Ct. 413, 338 A.2d 784 (1975).

The petitioners argue, however, that when they produced unequivocal medical testimony that Ellisor was no longer disabled, the burden shifted to Ellisor to prove by unequivocal medical evidence that he continued to be totally disabled as a result of his September 12, 1977 injury. In support of this proposition, petitioners have culled dicta from two of our cases, *Dale Manufacturing Co. v. Workmen's Compensation Appeal Board,* 34 Pa. Commonwealth Ct. 31, 382 A.2d 1256 (1978), and *Anderson v. Independent Pier Co.,* 13 Pa. Commonwealth Ct. 268, 320 A.2d 925 (1974). We have consistently held, however, that the party seeking termination of workmen's compensation benefits has the burden of proving that all disability related to a compensable injury has ceased and that, if a claimant is currently disabled, the petitioner must show a lack of causal connection between that disability and the compensable injury. *See, e.g., Motor Truck Owens Conference, Inc. v. Workmen's Compensation Appeal Board, supra.* We have never held that in termination proceedings the burden shifts at anytime to the claimant to prove the existence of a causal connection between his disability and his injury.

Accordingly, we enter the following:

ORDER

AND Now, this 15th day of April, 1980, the order of the Workmen's Compensation Appeal Board, dated June 7, 1979 is affirmed, and it is ordered that judgment be entered in favor of Thomas Ellisor and against Unity Builders, Inc. and its insurer, Fireman's Insurance Company, for the payment of workmen's

compensation benefits for total disability at the rate of $184.57 per week, beginning with the week of May 26, 1978 and continuing into the indefinite future in accordance with The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, §101 et seq., *as amended,* 77 P.S. §1 et seq.

Interest is to be paid on all deferred payments of compensation due at the rate of ten percentum per annum in accordance with the Act.

Unity Builders, Inc. and/or its insurer, Fireman's Insurance Company, are ordered to pay the reasonable medical and defense costs in the amount of $827.29; to be paid to Thomas Ellisor's counsel, who shall be responsible for the proper distribution of these costs. Unity Builders, Inc. and/or its insurer, Fireman's Insurance Company, are further ordered to pay to Thomas Ellisor's counsel reasonable attorney fees in the amount of $1,265.00, which amount shall be deducted from the deferred compensation due Thomas Ellisor and shall be paid directly to Thomas Ellisor's counsel.