103 Pa. Commonwealth Ct. 278 (1987)
520 A.2d 112
Central Pennsylvania Community Action, Inc., and State Workmen's Insurance Fund, Petitioners
v.
Workmen's Compensation Appeal Board (Probeck), Respondents.
No. 1064 C.D. 1986.
Commonwealth Court of Pennsylvania.
Argued November 21, 1986.
January 21, 1987.
Argued November 21, 1986, before Judges MacPHAIL and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.
*279 Paul J. Dufallo, Assistant Chief Counsel, for petitioners.
Thomas F. Morgan, for respondent.
OPINION BY SENIOR JUDGE BARBIERI, January 21, 1987:
Before this Court in this workmen's compensation case is the appeal of Central Pennsylvania Community Action, Inc., Employer, and its insurer, State Workmen's Insurance Fund, seeking review of an order by the Workmen's Compensation Appeal Board (Board), which reversed a referee's termination order and dismissed the termination petition filed by the Employer and its insurer. We will affirm.
Claimant, Judith Probeck, was injured in the course of her employment on September 7, 1979, while descending a ladder with a can of paint. She missed her step on the ladder and fell ten steps down, landing "flat on my back." Claimant's regular work has been what may be termed "laborer's work," including driving a tractor-trailer, presser in a clothing plant and, the employment at the time of her injury, the renovation and remodeling of homes, which she described as follows:
A. I poured cement; I laid block; I tore out walls; I laid down tile floor; anything.
Q. Laboring jobs?
A. Right; anything and everything and I loved it because it was different.

*280 Q. All right. What did you do for Community Action?
A. That was it.
Q. Was that it?
A. Yes.
Claimant has been under medical care since the fall, and apparently walks with assistance of a cane; at one time, with crutches. Although the best we can make of the medical testimony is that there is a dearth of medical evidence to support a "physical injury" as responsible for the disability, rather there is a psychic influence in Claimant's disability, described by one medical expert as "psychosomatic." There is no competent testimony to dissociate from the injury of September 7, 1979, the psychosomatic component or any of the other possible causes for Claimant's disability.
Nevertheless, the referee made the following findings:
14. That if, in fact, this claimant has any disability at the present time, it is related to her personality and emotional problems which existed for many years prior to her employment with this defendant, and which were not caused by, or related to the incident of September 7, 1979.
15. That your Referee finds as a fact that all disability resulting from the injury of September 7, 1979 ceased and terminated on September 1, 1982, the date Dr. Osgood released her to return to work.
16. That your Referee finds as a fact that any pain, discomfort or disability which this claimant experienced after September 1, 1982, was not and is not the result of, or in any way related to the work-related incident and injury of September 7, 1979.
17. That your Referee finds as a fact that any pain, discomfort, or disability experienced by *281 this claimant on and after September 1, 1982, are the result of the claimant's emotional and psychological problems which were not, and are not the result of, or in any way related to the work-related injury of September 7, 1979.
The referee concluded:
CONCLUSIONS OF LAW
Upon the facts appearing in the Petition for Termination, and the evidence submitted, your Referee arrives at the following Conclusions of Law:
The defendant has proved by competent evidence the allegations set forth in its Petition for Termination and your Referee concludes as a matter of law that the defendant is entitled to a termination of benefits as of September 1, 1982, the date Dr. Osgood released the claimant to return to work.
While reports were produced at the first hearing at which Claimant testified, those of Drs. Stanley J. Yoder, M.D. and Carroll P. Osgood, M.D., neither of them was called to testify. Instead, it was agreed by the parties that Claimant should be examined and evaluated by a psychiatrist. Such a medical expert, Dr. Joseph S. Silverman, M.D., examined Claimant on July 2, 1983, submitted a report and testified by deposition. Although his testimony may fall short of desired certainty, it rather supports the view of the Board that there is a complete failure here of the Defendants to meet the burden of proof upon them to show a termination or diminution of Claimant's disability. Chairman Fergus, writing for the Board makes a statement in his opinion upon which we cannot improve, as follows:
The Claimant has appealed from a Decision of Referee Mikesell terminating her compensation benefits. The original work injury was as a *282 result of a fall and a back problem which arose therefrom. Neither medical doctor whose reports are in the record feel that the Claimant is disabled from this back injury. The Claimant's doctor however indicates that the Claimant has a psychological defect. In an attempt to resolve the matter, the parties agreed to have the Claimant examined by a Dr. Joseph S. Silverman, who is a psychiatrist. Dr. Silverman's deposition and report are as obtuse, unresponsive and down-right evasive as any medical reports we have ever seen from any doctor. However because of the state of Pennsylvania Law on terminations, we feel that we must reverse the Referee because of Dr. Silverman's testimony. The burden to terminate compensation was on the Defendant. The Courts of Pennsylvania have consistently held that the party seeking a termination of workmen's compensation benefits has the burden of proving that all disability related to a compensable injury has ceased and that if a Claimant is currently disabled, the petitioner must show a lack of causal connection between the disability and the compensable injury. Unity Builders Inc. v. Workmen's Compensation Appeal Board, 413 A.2d 40 (1980) and George v. Workmen's Compensation Appeal Board, 437 A.2d 521 (1981). The Defendant has simply not met that burden of proof in this case. The Referee's 14th, 16th, and 17th Findings of Fact, are not supported by any competent medical evidence. In these Findings of Fact, the Referee finds that the Claimant's emotional problems are not as a result of the work incident. This is not the testimony of Dr. Silverman. Dr. Silverman was of the definite opinion that the Claimant suffers *283 from a `chronic pain disorder'. He was of the further opinion that the work injury initiated this chronic pain disorder even if it did not cause it. Even though it is difficult to ascertain what the doctor is attempting to say, it seems to us that he is concluding that the Claimant remains disabled because of a chronic pain disorder and that the work injury aggravated her pre-existing mental state and caused the pain symptoms. In any event there was no burden of proof on the Claimant. As noted above, it was the defendant's burden to show that the psychological disability was not related to the Claimant's work injury. At his best, Dr. Silverman relates it and at his worst, is unclear. It is really immaterial as to which he does as by his obtuseness he negates an ongoing disability. If he is unclear as to the cause of this ongoing disability, it enures to the benefit of the Claimant.
We agree with the Board's conclusion that the Defendants have failed to meet their burden of proof to establish a termination of liability and that the referee's findings on which he has based his termination order are defective in that there is a lack of substantial evidence in the record on which they can be supported.
While the referee did not have to accept as evidentiary or honor the statements made in the report of Claimant's physician, Dr. Stanley J. Yoder, it must at least be noted that Dr. Yoder recognized the psychogenic component in Claimant's disability. In his notes he records that Claimant is unable to "stand unsupported without her walker" and states that her "It [left] leg just simply collapses." He states as his "initial impression" that "this woman has a tremendous amount of functional overlay and anxiety to her symptoms." In his report to Claimant's attorney he states that in his *284 opinion, "it would be very difficult to make a case for continuing disability on the basis of her injury alone," but also noted in his report his suggestion "that it has probably been there a long time and is a natural wear-and-tear process aggravated by whatever happened at her work." (Emphasis added.) Obviously, the comments of Dr. Yoder run counter to the referee's findings made in support of his termination and, as the Board noted, it was not the Claimant's burden to establish her disability, but Defendants' burden to show that all disability from the injury, physical or psychogenic, had ceased.
Also, the report of Dr. Osgood, dated July 21, 1982, falls far short of establishing a termination of disability. His examination of Claimant's back revealed "some active spasm noted in the lumbar area," and the straight leg raising test was "[p]ositive for pain on the left at 60° in the sitting position." The final entry in his report, the author of which is not revealed, dated August 23, 1982, reads as follows:
Dr. looked at myelogram films & saw no definite abnormalities. EMG & NCVs were normal. Gave patient a RTW date of 9/1/82. When we called the patient, she said she didn't have any job to return to.
Of course, Defendants do not meet their burden to show a termination with statements like the ones contained in Dr. Osgood's report and, as previously noted, Dr. Osgood was never called to testify, so that we are not even certain as to who made the entry on August 23, 1983, let alone the fact that such an entry does not even recognize the psychogenic component of Claimant's work-related disability. Certainly, there is no evidence in the reports of Drs. Osgood and Yoder to dissociate Claimant's psychogenic disability from the work-related physical injury which component, we note, did not exist prior to that injury on September 7, 1979.
*285 Going now to the testimony of Dr. Silverman, we first note that Dr. Silverman was retained and called as a witness by the Defendants. Our examination of the entirety of his testimony leaves us with a certain conviction that Claimant has a "psychosomatic" disorder resulting from her injury on September 7, 1979, which is, therefore, work-related. His is the only medical testimony in the record, placed there by deposition, to which is added two of his reports accepted as Defendants' exhibits.
It is at least significant that Petitioners on this appeal do not rely in support of their appeal upon the medical reports of Drs. Osgood and Yoder, but appear to have agreed to defer to the opinion evidence of the psychiatrist, Joseph S. Silverman, M.D. Dr. Silverman in his report of July 8, 1983, ruled out malingering by Claimant, stating "I have no notion that she is malingering."
He testified that Claimant's "chronic pain disorder seems to be disabling" and that it was "initiated by the injury of September 8, 1979."
In his deposition, he verified the pain which appears to account for Claimant's disability. He testified:
Q. In particular, the statement that was contained in your letter of November 3, 1983 that the injury initiated the problem but by no means caused it. Can you say that that is an opinion based on a reasonable degree of medical certainty?
A. I would feel that's definitely state of the art in medicine. That's what we say about it now.
Q. Thank you, Doctor, I have no further questions.
CROSS EXAMINATION OF DR. JOSEPH S. SILVERMAN, DEPONENT, BY THOMAS F. *286 MORGAN, ESQUIRE, COUNSEL FOR THE CLAIMANT, JUDITH PROBECK, IN THIS ACTION.
Q. Doctor, would you agree that this pain is real to her?
A. It is my understanding and my belief that it is.
Q. In other words, from the letter and our short discussion before, do I gather that we have a person here who suffered an injury, which maybe for ninety-five percent (95%) of the rest of the population would not have caused any particular problems that would have lasted until this time, but in her case she perhaps used this as a mechanism, as an excuse for whatever ...
A. Unconscious.
Q. . . . unconsciously to suffer the problem she has?
A. Yes.
Furthermore, having testified that while the fall would not have been a sufficient cause to account for her present symptoms "it would have been a necessary cause in terms of what she presented with in July of '83." His further testimony includes the following:
Q. Judith Probeck had a particular psychological makeup, suffered this injury and because of her makeup, this injury ... because of this injury she then has suffered these physic [sic] problems?
A. Psychosomatic problems.
....
Q. Turning back to this then, would this be a fair statement. We have somebody here who has a disability and this disability is to a great extent emotional?

*287 A. Disability, yes, and I would call it psychosomatic.
Q. Which would be primarily or at least emotional at its basis?
A. With a strong emotional element.
Q. And that some of this had to do with the fact of her psychological makeup before she ever had this accident?
A. That's correct.
Q. So then she had the accident?
A. Right.
Q. The accident then, taking into account the person we had to start with and her psychological makeup, then caused the disability?
A. The interaction of those factors caused the disability, in my view.
Considering the legality of the Board's reversal of the referee, we first note, as the Board did, that, on a termination petition, the burden of proof to show a cessation of liability is on the defendant and never shifts to the claimant to prove the existence of a causal connection between a disability and the original injury. In short, the defendant's burden is to prove lack of causal connection rather than there being any burden on the claimant to prove the existence of causal relationship. Unity Builders, Inc. v. Workmen's Compensation Appeal Board (Ellisor), 50 Pa. Commonwealth Ct. 527, 413 A.2d 40 (1980); McGinley v. Workmen's Compensation Appeal Board (Acme Markets, Inc.),, 77 Pa. Commonwealth Ct. 214, 465 A.2d 147 (1983); Forbes Health System v. Workmen's Compensation Appeal Board (Washington), 75 Pa. Commonwealth Ct. 639, 463 A.2d 83 (1983).
In Unity Builders, we stated:
We have consistently held, however, that the party seeking termination of workmen's compensation *288 benefits has the burden of proving that all disability related to a compensable injury has ceased and that, if a claimant is currently disabled, the petitioner must show a lack of causal connection between that disability and the compensable injury. ... We have never held that in termination proceedings the burden shifts at anytime to the claimant to prove the existence of a causal connection between his disability and his injury.
50 Pa. Commonwealth Ct. at 532, 413 A.2d at 43 (Citation omitted).
As was stated by our Supreme Court in Barrett v. Otis Elevator Co., 431 Pa. 446, 246 A.2d 668 (1968):
A finding that is completely unsupported by competent evidence does not capriciously disregard competent evidence if there is not competent evidence to support a contrary finding.
431 Pa. at 451, 246 A.2d at 671.
Furthermore, although the Defendants here have not relied in this appeal upon the medical report of Dr. Osgood, we have held that a termination order may not be based on a mere finding that the Claimant "was able to return to work," since a termination may only be based upon a finding supported by substantial evidence that disability "has temporarily or finally ceased."[1]Lord v. Workmen's Compensation Appeal Board (Sealy Spring Corp.), 38 Pa. Commonwealth Ct. 626, 395 A.2d 598 (1978).
Of course, it has long been recognized that psychogenic disabilities when work-related are compensable and that a disability commencing with "a physical *289 injury," later supplemented by a "psychogenic component" is fully compensable since such psychogenic disorders resulting from physical injuries, are compensable. Oscar Mayer & Co. v. Workmen's Compensation Appeal Board (Manzi), 65 Pa. Commonwealth Ct. 514, 442 A.2d 1238 (1982); Dill Products v. Workmen's Compensation Appeal Board (Cuff),, 42 Pa. Commonwealth Ct. 563, 401 A.2d 409 (1979); Workmen's Compensation Appeal Board v. F. W. Woolworth Co., 19 Pa. Commonwealth Ct. 413, 338 A.2d 784 (1975). Of course, "psychosomatic" disabilities resulting from work injuries are compensable. F. W. Woolworth.
In F. W. Woolworth, the original "physical" injury was a cut on the back of the claimant's right hand, and the subsequent psychosomatic disability was an "involuntary, incessant, and unabated flapping of [claimant's] right wrist and hand which had begun during therapy treatment for her injury." Although there was medical testimony by the employer's medical witness that he could find no organic cause for the flapping, suggesting a psychosomatic problem, and apparently there was no competent medical testimony connecting the psychosomatic problem with the work injury, this Court approved the denial of the termination petition stating:
The employer and its carrier simply failed to carry their burden of proof. As they note in their brief, Dr. Mainzer `never testified that in his opinion it [the flapping] was related [to Ms. Mialka's injury].' Nor did he say it was unrelated. Having presented no proof of the absence of causal connection between the injury and the flapping of the appellee's right hand, the appellants were required to demonstrate cessation of the disability in order to prevail. Their only showing in this regard was that no organic cause *290 can be found for the flapping. This was wholly inadequate.
19 Pa. Commonwealth Ct. at 416, 338 A.2d at 786.
In light of the foregoing, resulting from our study of the record as a whole,[2] we agree with the Board that there is no substantial evidence sufficient to support the findings on which a termination of liability may properly be supported. Accordingly, we will affirm.

ORDER
NOW, January 21, 1987, the order of the Workmen's Compensation Appeal Board, as of No. A-88203, dated April 4, 1986, is hereby affirmed.
NOTES
[1] The language quoted is from Section 413 of The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §772.
[2] The "record as a whole" or "testimony as a whole" standard of review is established in our appellate court decisions. Lewis v. Workmen's Compensation Appeal Board, 508 Pa. 360, 498 A.2d 800 (1985); Bethlehem Mines Corp. v. Workmen's Compensation Appeal Board (Plutch), 97 Pa. Commonwealth Ct. 346, 509 A.2d 942 (1986).