582 A.2d 434

COUNTY OF DAUPHIN, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL BOARD (DAVIS), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 13, 1990.

Decided Nov. 13, 1990.

Paul J. Dellasega, Thomas & Thomas, Harrisburg, for petitioner.

Valerie Potteiger Gunn, Purcell, Nissley, Krug & Haller, Harrisburg, for respondent, Etta Davis.

Before SMITH and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PELLEGRINI, Judge.

The County of Dauphin (Employer) appeals from an order of the Workmen's Compensation Appeal Board, which reversed in part the Referee's decision granting Etta Davis (Claimant) compensation benefits from September 17, 1987 to February 3, 1988.

Claimant was employed in 1979 as a nursing assistant at Dauphin Manor which is a Dauphin County public nursing home. On October 8, 1983, Claimant fell at work, injuring her back right side. As a result of this work-related injury, Claimant received total disability benefits at the rate of $153.00 per week. In September of 1985, Claimant returned to work at Dauphin Manor as a dietary aid, but worked only one day because she was unable to physically perform her employment duties. Claimant was then given alternative employment and returned to work at Dauphin Manor as a PBX operator on the weekends. Claimant held that position from November 22, 1985 to September 7, 1986, during which time she received only partial disability benefits. Because Claimant continued to experience back pain, she missed two weekends of work and was terminated. Claimant again began receiving total disability benefits.

Although Claimant continued to have flare-ups of back pain, she contacted Dauphin Manor's rehabilitation servicer, Kulman Associates (Kulman), regarding the availability of work for her to perform. Claimant went on interviews arranged through Kulman, and in July of 1987, was hired

by Kinetic Industries (Kinetic) as an assembly worker. However, Claimant's back pain again flared-up and caused her to miss several days of work.[1] Because Claimant's back pain continued to interfere with the performance of her work required at Kinetic, Claimant's treating physician, Alan D. Roumm, M.D., prescribed bed rest to relieve her back pain and recommended that Claimant not return to work until September 19, 1987. Claimant followed Dr. Roumm's advice, even though Kinetic wanted Claimant to return to work on September 16, 1987. When Claimant did not return to work at Kinetic on September 16, 1987, she was terminated. After losing her job at Kinetic, Claimant began receiving only partial disability benefits in the amount of $27.97 per week.[2] Claimant tried on her own, as well as with the assistance of Kulman, to find another employment position, but was unable to do so.

Claimant then sought the reinstatement of total disability benefits as of September 17, 1987. A hearing was held to determine whether Claimant's status had changed from partial to total disability. Claimant's physician, Dr. Roumm, testified that although Claimant was motivated to work and voluntarily sought out new job applications, she continued to be disabled and could not work because her flare-ups of back pain resulting from her work-related injury to her back interfered with her ability to work. Employer's medical expert, J. Joseph Danyo, M.D., on the other hand, testified that as of February 3, 1988, the date on which he had examined Claimant, she was no longer disabled from her work-related injury because her pain resulted from a "functional overlay" rather than a physical cause.[3]

1. Claimant notified Kulman about her back pain. She requested that they speak to Kinetic to inform them of her problem and ask if she could have some time off from work to recuperate while still retaining her position with Kinetic.

2. The record is devoid of any information which provides an explanation for the reduction of Claimant's total disability benefits to partial disability benefits.

3. The Referee's finding of fact number 22 referred to the functional overlay as a "functional component."

Although the Referee found Dr. Roumm's testimony convincing on the issue of reinstatement of compensation benefits, the Referee found Dr. Danyo's testimony convincing on the issue of termination, and determined that the Employer had met its burden of proving that all of Claimant's disability due to her work-related injury had ceased as of February 3, 1988. The Referee then ordered total disability benefits to be reinstated at the rate of $153.00 per week for the period of September 17, 1987 to February 3, 1988, because Claimant had been totally disabled for that time period, but discontinued all disability payments thereafter because Claimant's disability had ceased as of February 3, 1988.

Claimant appealed the Referee's decision to the Board, which determined that Dr. Danyo's testimony did not prove that Claimant had ceased to be disabled as of the date of his examination. Specifically, the Board found that there was no testimony or evidence presented by the Employer to show that the "functional overlay" which Dr. Danyo referred to was not related to Claimant's original work injury. The Board reversed the Referee's decision in part and ordered that total disability benefits be reinstated at the rate of $153.00 per week from September 17, 1987, into the future until further ordered. The present appeal by the Employer followed from that decision.

The issue now before us is whether the Board erred in determining that the Employer had failed to meet its burden of proving that Claimant was no longer injured as of February 3, 1988, when it raised the possibility that her condition was the result of a "functional overlay."

This court has continuously held that a party seeking to terminate compensation benefits has the burden of proving that all of Claimant's disability related to the compensable injury has ceased. *Unity Builders, Inc. v. Workmen's Compensation Appeal Board (Ellisor)*, 50 Pa. Commonwealth Ct. 527, 413 A.2d 40 (1980). A disability is presumed to continue until demonstrated otherwise. *Olivetti Corporation v. Workmen's Compensation Appeal*

*Board (Robinson),* 75 Pa. Commonwealth Ct. 584, 462 A.2d 934 (1983).

In this case, the Employer contends that it met its burden of proving that Claimant was no longer disabled when Dr. Danyo testified that Claimant's complaint of continuing back pain was due to a "functional overlay" rather than a physical cause and Claimant was no longer suffering from her work-related injury. We disagree.

■ The term "functional overlay" has been defined as an impairment, apparently physical, affecting the use or operation of some bodily part, but without measurable structural or organic change, usually produced by an emotional or mental abnormality or conflict. It may overlay, compound or even obscure symptoms of a co-existing true organic disease. *Am.Jur. Proof of Facts, Fact Book with Medical Glossary,* p. 974 (1983). A disability resulting from a work-related physical injury later supplemented by a psychogenic component[4] is referred to as a "functional overlay" and, because it is a result of the work-related injury, is fully compensable. *Central Pennsylvania Community Action, Inc. v. Workmen's Compensation Appeal Board (Probeck),* 103 Pa. Commonwealth Ct. 278, 520 A.2d 112 (1987).

■ The Employer advances the proposition that Dr. Danyo's use of the term "functional overlay" does not refer to a psychogenic disability which may be compensable, but instead is simply Dr. Danyo's way of describing that Claimant is no longer physically disabled. However, we cannot reach such a conclusion when Dr. Danyo's testimony indicates otherwise.

The testimony reveals that when Dr. Danyo was asked whether the fact that Claimant complained of back pain during his examination when he rubbed the skin over her spine was significant, he responded, "Yeah, that's a *mental*

---

4. Psychogenic is defined as "originating in the mind or in mental or emotional conflict." Webster's New Collegiate Dictionary 950 (9th ed.1989).

complaint. Her spine was about four inches below the skin and there should be no pain from just rubbing the skin." (Reproduced Record at 70a.) When Dr. Danyo was next asked to explain what he meant when he said that a readout of Claimant's testing abilities to lift certain weights was a "functional interpretation," he responded that this meant she performed a *mental functional* lift and was not lifting as firmly or hard as she could. (Reproduced Record at 71a.) Most importantly, however, was Dr. Danyo's response when he was asked to explain what he meant when he used the term "functional overlay" to describe Claimant's difficulty in performing stress tests for use in evaluating her disability. Dr. Danyo replied, "That's a polite way of saying *the patient is a mental case.* Sometimes we use that in lieu of malingering. I use the term malingering where it's out and out right fraud, and anything below that I use the term functional. Essentially, it means there is nothing wrong." (Reproduced Record at 79.)

If Dr. Danyo had meant to say that Claimant was merely faking her pain and did not actually suffer from pain in any way, he would have said so. Instead, Dr. Danyo stated at three different times that Claimant's pain was the result of a *mental* complaint. In so many words, Dr. Danyo was saying that Claimant's pain was imagined or in her head. At no time did Dr. Danyo state that Claimant was not experiencing pain or was faking her pain. Therefore, Dr. Danyo's use of the term "functional overlay" to describe Claimant's current condition expressed that Claimant had a psychogenic disability and her disability resulting from her work-related injury had not ceased.

Although the Employer correctly cites the case of *Bell v. Workmen's Compensation Appeal Board (City of Philadelphia),* 53 Pa. Commonwealth Ct. 156, 417 A.2d 273 (1980), for the proposition that the use of the term "functional overlay" by a medical expert does not necessarily establish a continuing disability, the issue of whether Claimant actually has a psychogenic disorder is not before this court. The Board reinstated total disability benefits on the

basis that the Employer had raised the *possibility* that Claimant may have a continuing compensable disability, and, thus, had not met its burden of proving that Claimant's disability had ceased for purposes of terminating benefits.

Consequently, because Dr. Danyo raised the possibility of Claimant having a continuing compensable disability, and the Referee found the testimony of Dr. Roumm to be convincing on the issue of reinstatement of compensation benefits, we find that the Board properly found that the Employer failed to carry its burden of proving that all of Claimant's disability resulting from her work-related injury had ceased and that Claimant continued to be disabled as a result of her work-related injury. Accordingly, we affirm the decision of the Board.

## ORDER

AND NOW, this 13th day of November, 1990, the order of the Workmen's Compensation Appeal Board, No. A–97080, dated October 20, 1989, is affirmed.

SILVESTRI, Senior Judge, dissents.