IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clearwater Construction Company, Inc. :
and BITCO Insurance Companies, :
              Petitioners :
               :
      v. : No. 322 C.D. 2023
               :
Kenneth Wilson (Workers' : Submitted: November 6, 2025
Compensation Appeal Board), :
             Respondent :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE LORI A. DUMAS, Judge


***OPINION NOT REPORTED***

MEMORANDUM OPINION BY
JUDGE McCULLOUGH               FILED: December 10, 2025

        Clearwater Construction Company, Inc. and BITCO Insurance Companies (collectively, Employer) petition for review of the March 8, 2023 order of the Workers' Compensation Appeal Board (Board), which affirmed the August 29, 2022 decision of a workers' compensation judge (WCJ) that granted Kenneth Wilson's (Claimant) Claim Petition and ordered Employer to pay Claimant temporary total disability benefits. Upon review, we affirm.

## I.    Facts and Procedural History

        Claimant worked for Employer as a flatbed truck driver/yard laborer. On December 26, 2019, Claimant sustained an injury to his lower back while lifting 4 x 8 concrete panels for Employer. (WCJ Decision, Finding of Fact (FOF) No. 5a.) On January 14, 2020, Employer issued a Notice of Temporary Compensation Payable accepting that Claimant suffered a work-related injury in the nature of a lower back

strain on December 26, 2019. *Id.*, FOF No. 4. On March 24, 2020, Employer issued a Notice Stopping Temporary Compensation and a Notice of Denial indicating that Claimant's disability ended March 24, 2020, when Claimant was released to return to work without restrictions and at his pre-injury wages. *Id.* On February 26, 2021, Claimant filed a Claim Petition seeking full disability from March 26, 2020, and onward, plus payment of medical bills, counsel fees, and penalties for failure to reinstate benefits. *Id.*, FOF No. 1.

The Claim Petition was assigned to a WCJ, who held three hearings. Claimant testified at each hearing and offered the deposition testimony of his treating orthopedic surgeon, Carmen A. Petraglia, M.D. *Id.*, FOF Nos. 5-8, 10. Claimant testified that on the morning following his work injury, he felt a jolting pain which dropped him to his knees. *Id.*, FOF No. 5a. The following day, he went to the hospital emergency room (ER) by ambulance for extreme lower back pain. An MRI was taken of his lower back at the ER. At the Employer's direction, Claimant sought treatment from a panel physician, Dr. Victor Thomas, who prescribed muscle relaxers, physical therapy, and referred him for further treatment to a pain specialist, Dr. Provenzano. *Id.*, FOF No. 5b. Dr. Provenzano gave Claimant two injections, which improved his symptoms by 75-80%, but the injections wore off after a few days. *Id.*, FOF No. 5c.

On March 26, 2020, Dr. Thomas sent Claimant back to work, without restrictions. *Id.*, FOF No. 5d. Upon his return, however, Claimant did not resume his regular duties. Employer placed Claimant on desk duty where he cleaned computer printers for four to five days. The office then shut down due to the COVID-19 pandemic. Claimant was told that no jobs were available and that the office was closing. Claimant signed a voluntary layoff after being told multiple times to take it. *Id.* Claimant testified that about a week after he was laid off other employees went

2

back to work. He received unemployment compensation after the layoff. He did not believe he could perform his regular job. He believed he could work in some capacity such as cleaning computers and printers. *Id.*, FOF No. 5d, 5g.

Claimant returned to Dr. Provenzano in February of 2021, complaining that his back would become worse even with light activity around his house. Dr. Provenzano recommended a procedure where he would burn the nerves in Claimant's spine, but the workers' compensation carrier denied the treatment. *Id.*, FOF No. 5h. Claimant indicated that he could not get further treatment from Dr. Provenzano, because the doctor required upfront payment. He stated that without treatment, he did not believe he could return to work. *Id.* He indicated that other employees had been called back to work about a week after the lay-offs but he was not called back. *Id.*

On cross-examination, Claimant was asked about a prior medical record from MedExpress in December of 2012 regarding a back injury which he did not recall. He was also asked about a record from Heritage Valley Health System dated February 14, 2019, indicating that he hurt his back a year prior by lifting a box at work. *Id.*, FOF No. 7b. Claimant explained that he did not receive long-term care for either prior back incident. *Id.* He stated that he had not seen any doctors for his back from February of 2019, until December 26, 2019. *Id.*

Dr. Petraglia testified by deposition in support of Claimant's Claim Petition. *Id.*, FOF No. 8. Dr. Petraglia testified that he first examined Claimant in June of 2021, after conservative treatments with Dr. Thomas and Dr. Provenzano failed. *Id.*, FOF No. 8a. He explained that Claimant presented a history of low back pain radiating into his legs, and Claimant's Magnetic Resonance Imaging (MRI) results confirmed L1-L2 and L5-S1 disc herniations. *Id.*, FOF No. 8a-d. Based on Dr. Petraglia's examination of Claimant, review of the MRIs, and Claimant's prior medical history,

3

he opined that Claimant's current complaints were related to the December 26, 2019 work injury. *Id.*, FOF No. 8e. On cross-examination, Dr. Petraglia admitted he did not have any of Claimant's medical records of past or present treatment. He was asked if Claimant's complaints of back and neck pain in 2012 and 2019 would alter his opinions. *Id.*, FOF Nos. 8e, 8i, 8j. He indicated that based on the type of work that Claimant was performing, if he had any prior injuries, the December 2019 incident "could have set him up for an aggravation of symptoms." *Id.* He also noted that it was hard to determine whether any earlier complaints contributed to the findings that were present on the post-injury MRI scans. *Id.* He further explained that if those prior incidents were severe, he would have expected Claimant to seek more medical intervention, and that the only time Claimant missed work was after the December 26, 2019 incident. *Id.* Dr. Petraglia was surprised by the full-duty release in March of 2020, based on Claimant's symptoms.

In defense of Claimant's Claim Petition, Employer offered the testimony of D. Kelly Agnew, M.D., who performed an Independent Medical Examination of Claimant on January 5, 2022. *Id.*, FOF No. 9. Dr. Agnew opined that based on his review of the medical records, Claimant's continued complaints were nonorganic in nature and unrelated to the December 26, 2019 work incident. *Id.*, FOF No. 9d. Employer also submitted medical records from Dr. Thomas releasing Claimant to work without restrictions; medical records dated February 2019 from Allegheny Health Network, noting that Claimant complained that he hurt his back lifting a box; and a copy of the voluntary layoff signed by Claimant.

Following the hearings, the WCJ issued a decision granting Claimant's Claim Petition. The WCJ specifically found Claimant's testimony regarding his work

injury to be credible, forthright, and consistent. The WCJ's Finding of Fact No. 13 states:

> The testimony of the Claimant is found to be credible, forthright and consistent. He testified by video on multiple occasions throughout the litigation. He provided straightforward testimony about the mechanism of injury and the development of his symptoms afterward. He was forthright about his willingness to perform modified duty work, which was demonstrated by his return to work prior to the pandemic layoffs. This [WCJ] also accepts his testimony as credible that he is unable to perform his pre-injury duties.

*Id.*, FOF No. 13. The WCJ also credited the testimony of Dr. Petraglia over that of Dr. Agnew. The WCJ's Finding of Fact No. 14 states:

> The testimony of Dr. Carmen Petraglia is found to be credible, convincing and unequivocal. This [WCJ] affords greater weight to Dr. Petraglia's opinions over those of Dr. Agnew because he is the Claimant's treating orthopedic surgeon. This [WCJ] finds Dr. Petraglia's interpretation of the MRI studies to show disc herniations at the L1-L2 level and L5-S1 level to be more convincing than the explanation provided by Dr. Agnew. This [WCJ] further accepts Dr. Petraglia's correlation of the Claimant's symptoms to the MRI findings. **It is noted that Dr. Petraglia's opinions were unchanged by the revelation of prior low back injuries and complaints, with the doctor opining that if there were prior problems they were aggravated by the incident on December 26, 2019. This opinion is supported by the fact that the Claimant was able to perform his job without missing time from work until he had the injury in December of 2019**.

*Id.*, FOF No. 14 (emphasis added). Accordingly, the WCJ concluded that

> Claimant met his burden of proof on the Claim Petition that he sustained a work-related injury on December 26, 2019[,] of L1-L2 and L5-S1 disc herniations. [] Claimant has been totally disabled from his time-of-injury job since December

26, 2019, with a brief return to modified duty for four of five days in March 2020, and accepted a layoff during the pandemic shut-down. Temporary total disability benefits are payable to the Claimant from the date of layoff through present and continuing, with a credit for Pennsylvania Unemployment Compensation Benefits received.

*Id.*, Conclusion of Law No. 2.

Employer appealed to the Board, arguing that the WCJ erred in concluding that Claimant met his burden of proving that he sustained a work-related injury that caused a disability. Specifically, Employer argued that (1) Dr. Petraglia's opinion was not competent because it was based "solely on Claimant's report/history, which was not supported by the overwhelming evidence"; and (2) Claimant accepted a voluntary layoff as of March of 2020 due to the COVID-19 pandemic, which prevents him from collecting disability benefits. The Board rejected both arguments and affirmed the decision of the WCJ. With respect to the competency of Dr. Petraglia's opinions, the Board, after reviewing Dr. Petraglia's testimony, determined that he was unequivocal in his opinions. The Board noted that Dr. Petraglia testified that Claimant was able to work full-duty before the work incident, so he did not afford much weight to Claimant's previous treatment history or to the one-time MedExpress visit. It further noted that the weight afforded to medical experts was solely within the purview of the WCJ.

Regarding Claimant's acceptance of a voluntary layoff due to the pandemic, the Board noted that the WCJ found Claimant credible that he was unable to perform his pre-injury position and that he was performing sedentary duty instead when he was "required" to sign the "voluntary layoff" paper. (Bd. Dec., 3/8/23, at 6.) The Board determined that, therefore, under our well-established caselaw as set forth in *Teledyne McKay v. Workmen's Compensation Appeal Board (Osmolinski)*, 688 A.2d 259 (Pa. Cmwlth. 1997) (holding that when a claimant returns to work with restrictions and is subsequently laid off, the claimant is entitled to a rebuttable presumption that

6

the work disability continues), Claimant was entitled to the rebuttable presumption that the layoff was due to the work injury, not the pandemic. Employer now appeals to this Court.

## II. Issues[1]

Employer argues, as it did before the Board, that the WCJ erred as a matter of law in finding Claimant disabled on and after March 23, 2020, the date Claimant accepted a voluntary layoff due to the COVID-19 closure despite his full-duty release to work. Employer further contends that Dr. Petraglia's opinion does not rise to the level of substantial evidence that a reasonable mind might consider adequate to support the underlying decision because Dr. Petraglia relied solely on Claimant's account of his past medical history, which Employer maintains was contradicted by the medical records.

## III. Analysis

### A. Rebuttable Presumption - Loss of Earnings After March 23, 2020

In its first issue, Employer argues that the WCJ erred as a matter of law in finding Claimant was disabled on and after March 23, 2020, the date Claimant took a voluntary layoff due to COVID-19 closure, even though Claimant had a full-duty release to work. Employer contends that Claimant's loss in earnings after March 23,

---

[1] This Court reviews workers' compensation orders for violations of a party's constitutional rights, violations of agency practice and procedure, and other errors of law. 2 Pa.C.S. § 704. We also review whether substantial evidence supports the findings of fact necessary to sustain the WCJ's decision. *Id.* The WCJ is the ultimate factfinder in workers' compensation cases and is entitled to weigh the evidence and assess the credibility of witnesses. *Montano v. Advance Stores Co., Inc. (Workers' Comp. Appeal Board)*, 278 A.3d 969, 978 n.4 (Pa. Cmwlth. 2022) (citing *Sharkey v. Workers' Comp. Appeal Board (Federal Express)*, 786 A.2d 1035, 1038 (Pa. Cmwlth. 2001)). This Court will not disturb a WCJ's findings so long as there is substantial evidence in the record to support those findings. *Berardelli v. Workmen's Compensation Appeal Board (Bureau of Personnel State Workmen's Insurance Fund)*, 578 A.2d 1016, 1018 (Pa. Cmwlth. 1990).

2020, was due to a companywide closure due to the pandemic and had no causal relationship with Claimant's work injury. In support of its position that Claimant's layoff had no causal relationship to his work injury, Employer emphasizes that Claimant neither sought nor received any medical treatment between March 2020 and February 2021 for the work incident, and that Dr. Thomas reported on March 23, 2020, that Claimant had no pain complaints, and had a benign lumbar exam, and released Claimant to work without restrictions on March 26, 2020. Employer contends that the WCJ's finding that Claimant was still disabled as of that date was thus not supported by substantial evidence. Employer contends, therefore, that Claimant is not entitled to the presumption that his disability as of March 23, 2020, *i.e.*, loss of earnings, was causally related to the December 2019 work injury.

When a claimant has returned to a pre-injury job with restrictions and is subsequently laid off and petitions for a reinstatement of benefits the claimant is entitled to a presumption that his loss of earning power is causally related to the work injury. *Teledyne McKay*, 688 A.2d at 262; *EMI Co. v. Workers' Compensation Appeal Board (Rathman)*, 738 A.2d 33 (Pa. Cmwlth. 1999).

Moreover, in workers' compensation cases, "the WCJ is the ultimate fact[] finder who must determine credibility and evidentiary weight. In this role, the WCJ freely evaluates the evidence offered and can accept or reject any witness'[s] testimony, in whole or in part, including that of a medical witness." *Davis v. Workers' Compensation Appeal Board (City of Philadelphia)*, 753 A.2d 905, 909 (Pa. Cmwlth. 2000). The relevant inquiry in a substantial evidence analysis is not whether the record contains evidence to support facts other than those made by the WCJ; the pertinent inquiry is whether there is evidence to support the findings actually made. *Hoffmaster*

8

*v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Here, Claimant was off work for his injury from December 27, 2019, until March 26, 2020, which was when the panel physician, Dr. Thomas, released him to work without restrictions. Claimant returned to work but was placed on sedentary duty. He also testified that he could not perform his pre-injury duties due to his work injury.

The WCJ found that at the time Claimant was laid off, he was not performing his pre-injury position as a flatbed truck driver/yard laborer because of the work injury. Despite Dr. Thomas's release of Claimant to full duty without restrictions as of March 24, 2020, the WCJ simply did not credit Dr. Thomas's opinion that Claimant was capable of such performance. Instead, the WCJ credited Claimant's testimony that he was unable to perform his pre-injury duties. Therefore, Employer's argument that Claimant returned to work "without restrictions" because he "had a full-duty release to work" from Dr. Thomas is unavailing. (Employer's Br. at 7.) Moreover, the fact that Claimant did not seek or receive medical treatment between March of 2020 and February of 2021, does not mean that Claimant had necessarily recovered from his work injury. The undisputed evidence showed that the reason Claimant did not seek or receive medical treatment during that period was because the insurance carrier refused payment for treatment, and he did not have other medical coverage.

Under such circumstances, we hold that Claimant is entitled to the presumption that his loss of earnings is causally related to the work injury. We reach this conclusion because under *Teledyne McKay*, the presumption applies where the claimant returns with restriction to a job other than the time-of-injury job. Clearly, that occurred here because the record supports the finding that Claimant did not return to

9

the time-of-injury job. His pre-injury job was that of a yard worker and truck driver. Claimant did not return to that position, rather he was put to work cleaning computers and printers. The WCJ found Claimant credible when he asserted that he was physically incapable of performing his pre-injury position and that he had not returned to his time-of-injury position but was actually performing sedentary work. Therefore, he is afforded the presumption discussed in *Teledyne*. Accordingly, we find this issue to be without merit.[2]

## B. Substantial Competent Evidence-Capricious Disregard

Next, we consider Employer's assertion that the WCJ erred as a matter of law in failing to address substantial medical evidence submitted by Employer that refutes not only Claimant's testimony but also contradicts the medical opinion of Dr. Petraglia, upon whom the WCJ relied. Specifically, Employer argues that the WCJ failed to consider the records from Allegheny Health Network placed into evidence by Employer that contradict Claimant's denial of prior lower back problems. Those records reveal that Claimant went to an Allegheny Health Network facility in February of 2019, complaining of a lumbar radiculopathy, chronic lower back pain and noting that he had previously hurt his back lifting a box. Employer also points to inconsistencies in Claimant's testimony, including that he gave different histories describing the mechanism of the alleged work injury, namely that he was loading 4 x 8 concrete panels and later that he was lifting an object weighing over 400 to 500 pounds. Employer contends that this calls into question Claimant's credibility and the nature of the medical opinion of Dr. Petraglia upon whom the WCJ relied. It contends

---

[2] Employer also suggests that Claimant's acceptance of unemployment benefits and pandemic relief amounts to an admission that he could do his regular duties. Although it is true that a worker must be able to do some form of work to receive Pennsylvania unemployment compensation benefits, such work does not need to be his regular work duties. Rather, it must be some form of work. Appellee testified credibly that he felt he could perform some form of light-duty work but not his regular duties.

that the WCJ made no effort to reconcile these discrepancies, which is tantamount to a capricious disregard of substantial and competent evidence warranting a reversal or, at the very least, a remand.

Employer also lists a number of concessions it elicited on cross-examination of Dr. Petraglia that it asserts compel us to conclude that Dr. Petragalia's testimony was equivocal and insufficient to support Claimant's burden of proof, including that: (1) he had no first-hand knowledge of Claimant's condition prior to June of 2021; (2) he had reviewed no records of any treatment dated prior to his examination of Claimant; (3) he was of the understanding that Claimant had no prior back problems; and (4) he did not review Dr. Thomas's treatment records that were the basis for the full-duty release. (Employer's Br. at 15-16.)

A claimant has the burden of proving all elements necessary to support an award on a claim petition, including the existence of a work-related injury resulting in disability and its duration. *Dennis v. Inglis House (Workers' Compensation Appeal Board)*, 303 A.3d 559, 564 (Pa. Cmwlth. 2023). Where the causal relationship between the work incident and the disability is not obvious, competent medical evidence is necessary to establish the nexus. *Id.* (citation omitted). In cases involving medical testimony, competent evidence means "medical testimony which expresses unequivocality." *Evans v. Workmen's Compensation Appeal Board (Anchor Hocking Corp,)*, 487 A.2d 477, 480-81 (Pa. Cmwlth. 1985). "[M]edical testimony is unequivocal if a medical expert testifies, after providing foundation for the testimony, that, in his professional opinion, he believes or thinks a fact exists." *O'Neill v. Workers' Compensation Appeal Board (News Corp., Ltd.)*, 29 A.3d 50, 58 (Pa. Cmwlth. 2011). On the other hand, medical testimony is equivocal "if it is based only upon possibilities, is vague, and leaves doubt." *Kurtz v. Workers' Compensation*

*Appeal Board (Waynesburg College)*, 794 A.2d 443, 449 (Pa. Cmwlth. 2002). When reviewing the equivocality of medical testimony, we consider the testimony in its entirety rather than a few words taken out of context. *Carpenter Technology Corp. v. Workmen's Comp. Appeal Board (Wisniewski)*, 600 A.2d 694, 696 (Pa. Cmwlth. 1991) (citation omitted).

After reviewing the record in this matter, we conclude the WCJ's factual finding that Claimant sustained a disabling work-related injury is supported by substantial evidence in the record. Dr. Petraglia testified that Claimant's current complaints were related to the December 26, 2019 work injury. Although there is evidence in the record, specifically the testimony of Dr. Agnew, that supports findings contrary to the WCJ's finding, it was within the WCJ's province to accept Dr. Petraglia's testimony as more credible than Dr. Agnew's testimony on the issue of causation and disability. Because the WCJ's findings are supported by substantial evidence in the record and we accept the WCJ's credibility determinations, we discern no error by the Board in affirming the WCJ's determination.

We also find no merit to Employer's argument that the WCJ's decision was arbitrary and capricious because the WCJ relied almost entirely on Dr. Petraglia's testimony. "Review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Leon E. Wintermyer, Inc. v. Workers' Compensation Appeal Board (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002). "A capricious disregard of evidence is a deliberate disregard of competent evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Fedchem, LLC v. Workers' Compensation Appeal Board (Wescoe)*, 221 A.3d 348, 357 (Pa. Cmwlth. 2019) (citations omitted). "Where there is substantial evidence to support an

agency's factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." *Leon E. Wintermyer, Inc.*, 812 A.2d at 487 n.14. This Court "may overturn a credibility determination only if it is arbitrary and capricious, so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *West Penn Allegheny Health System, Inc. v. Workers' Compensation Appeal Board (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (citation omitted). Capricious disregard of evidence "is a deliberate and baseless disregard of apparently trustworthy evidence." *Williams v. Workers' Compensation Appeal Board (USX Corp.-Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004).

Here, the WCJ considered Dr. Petraglia's and Dr. Agnew's testimonies at length and provided her reasons for finding Dr. Petraglia more credible than Dr. Agnew to the extent their testimony differed. As to Dr. Agnew's opinion that Claimant could return to his pre-injury job, the WCJ specifically rejected that opinion, finding Dr. Petraglia's opinion that Claimant could not perform his pre-injury duties was more credible. Thus, the WCJ acknowledged the conflicting medical testimony and did not capriciously disregard relevant competent evidence in rendering her decision.

A WCJ is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Jackson v. Workers' Compensation Appeal Board (Boeing)*, 825 A.2d 766, 772 (Pa. Cmwlth. 2003) (citation omitted). A WCJ's acceptance of one medical testimony over another does not constitute reversible error. *Id.* Insofar as Employer seeks to have this Court reweigh the evidence, we decline to do so as the WCJ is the factfinder and has the sole authority to assess credibility, resolve conflicting evidence, and determine the weight given to the evidence. *Hoffmaster*, 721

13

A.2d at 1155-56. We discern no capricious disregard of the evidence on the part of the WCJ, and therefore, the Board did not err by affirming the WCJ's Decision.

Next, we reject Employer's argument that the WCJ erred in accepting Dr. Petraglia's opinions regarding Claimant's back injury because Dr. Petraglia's testimony was equivocal and incompetent. In cases involving medical testimony, competent evidence means medical testimony that is "unequivocal and positive." *Roeberg Enterprises, Inc. v. Workmen's Compensation Appeal Board*, 400 A.2d 911, 912 (Pa. Cmwlth. 1979). Medical testimony is "unequivocal if the medical expert, after providing a foundation, testifies that in his professional opinion that he believes a certain fact or condition exists." *Campbell v. Workers' Compensation Appeal Board (Pittsburgh Post Gazette)*, 954 A.2d 726, 730 (Pa. Cmwlth. 2008). "Medical testimony is equivocal if, after a review of a medical expert's entire testimony, it is found to be merely based on probabilities." *Id.*; *see also City of Pittsburgh v. Workers' Compensation Appeal Board (Wilson)*, 11 A.3d 1071, 1075 (Pa. Cmwlth. 2011) (equivocality "is determined by reviewing the entire testimony of the medical witness").

Our review of Dr. Petraglia's testimony, in its entirety, reveals an unequivocal, or in other words, an unquestionable, opinion of Claimant's diagnoses and the work-relatedness of his injuries. Dr. Petraglia based his opinions upon his review of Claimant's MRIs, his review of Dr. Provenzano's records, his physical examinations of Claimant, and the medical history provided to him by Claimant, including his epidural injections, the recommended rhizotomy procedure, and physical therapy. Dr. Petraglia testified that all his opinions were given with a reasonable degree of medical certainty.

14

We also reject Employer's argument that Dr. Petraglia's testimony was incompetent because he was unaware that Claimant complained in 2012 and 2019 of neck and back pain. As the WCJ noted, Dr. Petraglia's opinions were unchanged by the revelation of prior lower back injuries and complaints, with the doctor opining that if there were prior problems they were aggravated by the incident on December 26, 2019. His opinion is supported by the fact that the Claimant was able to perform his job without missing time from work until he was injured in December of 2019. When cross-examined, Dr. Petraglia indicated that Claimant's past complaints in 2012 and 2019 of back and neck pain would not alter his opinions. He explained that if those prior incidents were severe, he would have expected Claimant to seek more medical intervention, and that the only time Claimant missed work was after the December 26, 2019 incident. In other words, that information did not change his opinion in any way. Notably, a medical expert's opinion is not rendered incompetent unless it is solely based on inaccurate or false information. *Casne v. Workers' Compensation Appeal Board (Stat Couriers, Inc.)*, 962 A.2d 14, 16 (Pa. Cmwlth. 2008). We review the opinion of a medical expert as a whole, and even inaccurate information will not render the opinion incompetent unless it is dependent on those inaccuracies. *Id.* In this regard, Dr. Petraglia's understanding of Claimant's prior back complaints, which he observed did not lead to any medical intervention or missed work, did not impact his conclusion that Claimant suffered a disabling injury in December of 2019. It was from that date forward that Claimant immediately and consistently sought medical treatment and that he was absent from work. Employer does not address the fact that neither of the prior back and neck complaints resulted in any medical intervention or time off from work. Neither Dr. Petraglia's opinion nor the WCJ's findings were dependent on Dr.

Petraglia's lack of knowledge that Claimant had in the past sought limited treatment for back pain.

Thus, we decline to deem his opinion incompetent, and we disagree with Employer that Dr. Petraglia did not have "a complete grasp" of Claimant's physical condition prior to the work injury. (Employer's Br. at 19.) Because Dr. Petraglia's testimony was competent and unequivocal, the WCJ did not err in relying on Dr. Petraglia's medical testimony as substantial support for her finding that Claimant sustained a disabling work-related injury. Accordingly, Employer's argument that Dr. Petraglia's testimony did not rise to the level of substantial competent evidence is without merit.

## IV.   Conclusion

Based on all the foregoing, we conclude that the Board did not err in affirming the WCJ's Decision.

_____
PATRICIA A. McCULLOUGH, Judge

16

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Clearwater Construction Company, Inc. :
and BITCO Insurance Companies, :
                Petitioners :
                  :
          v. : No. 322 C.D. 2023
                  :
Kenneth Wilson (Workers' :
Compensation Appeal Board), :
                Respondent :

## ***ORDER***

      AND NOW, this 10th day of December, 2025, the March 8, 2023 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

                                     _____
                                    PATRICIA A. McCULLOUGH, Judge